**TRENK, DiPASQUALE, WEBSTER,
DELLA FERA & SODONO, P.C.**
347 Mount Pleasant Avenue – Suite 300
West Orange, New Jersey 07052
(973) 243-8600
Anthony Sodono, III (AS9426)
*Counsel to Ifeoma Ezekwo, Debtor
and Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>IFEOMA EZEKWO,<br><br>              Debtor. | Case No.: 08-17247 (DHS)<br><br>Chapter 11<br><br>Honorable Donald H. Steckroth |

**CERTIFICATION OF IFEOMA EZEKWO IN SUPPORT OF FIRST AMENDED DISCLOSURE STATEMENT**

**IFEOMA EZEKWO**, of full age, hereby certifies as follows:

1. I am the Chapter 11 debtor and debtor-in-possession herein. I voluntarily filed my Chapter 11 case on April 22, 2008.

2. I am Board-certified in ophthalmology and internal medicine. I maintain a physician's office at my business which conducts business as the Bronx Eye Institute and Bronx Diabetes Center, located at 3013 Grand Concourse, Bronx, New York. I am fully familiar with all the facts set forth in this Certification.

3. Due to illness, other extraneous circumstances and real estate problems, I had no alternative than to file for Chapter 11 protection. Since the petition. I have tried to reorganize my office and to expand my offerings to patients. Because of the bankruptcy, however, some insurance companies have been unusually slow in paying my bills. Furthermore, Medicaid provided by the State of New York has not paid for my services in the past year, even though

they are submitted electronically. I have requested that the clearinghouse investigate the lack of payments to resolve these issues and expedite payment of my bills.

4. On a more positive note, however, I began researching ways to increase revenue in order to continue paying my creditors when the Plan is confirmed.

5. I therefore opened an optical shop inside my eyecare practice. I also plan on opening a hearing center inside the office. I have made all the arrangements, and obtained the required equipment.

6. I have an ongoing professional relationship with a medical business consultant, who I recently consulted with and who has advised me on the best way to proceed for better revenue and services.

7. On that expert advice, I now have an optical management company called Medical Eye Glasses ("Medical") that will be managing my optical business. Medical will find appropriate opticians and billing staff, train them and also stock, manufacture and monitor the optical store. Medical will also enroll my practice into all the relevant optical insurance plans and unions as well as government plans, which will increase the number of patients served, and, as a result, glasses and contact lenses sold, refractive surgeries and other procedures performed on patients.

8. With their expertise in medical billing and their professional clout, Medical will be able to assist me collect on my bills, as I will be treated as "one of their locations" (in total contrast to how I am being treated now as some hope for me to go away). I already have applications for the insurances that they will help me process so I can participate in them. I have also interviewed the optician and biller that will man the optical once hired.

9. The consultant has also devised ways to market the practice in a multi-pronged approach and referral sources to increase surgical volume.

10. The other aspect that was critical that the consultant addressed was using an ambulatory surgical center to operate on the increased patient base instead of a hospital setting, as hospitals have significant delays and cancellations.

11. Based on this information, I applied and was accepted to operate at the SurgiCare Ambulatory Center. Since my enrollment, there has been a significant increase in my surgery schedule. I have already scheduled, without difficulty, to perform operations every Wednesday for the remainder of August, 2009, and have the ability to operate with another colleague on some Mondays. Moreover, if I continue to have increased cases, I will be guaranteed to operate every first and third Wednesday of each month, as it will be blocked time for me. It is also an excellent environment for my patients. Based on this new facility for me to perform operations, I will only use the hospital for very ill patients that require a hospital setting. I have the application to another ambulatory center owned by a colleague, who is now allowing cataract cases and other anterior segment cases so I will have another location as back up. With the new optical store as well as the new marketing plan of the consultant, my procedure volume as well as my remuneration will increase.

12. In addition I have an agreement with Physicians Hearing Services, Inc. ("PHSI") to open a hearing center inside my eyecare practice to screen for patients with hearing problems and dispense hearing aids to them. This is significant because the same patient base and demographics that I have that have eye problems are the same that need hearing aids. My specialization in internal medicine and being a diabetes expert results in me having more patients with hearing deficits than the general population.

13. PHSI is presently looking for a hearing instrument specialist to operate the center while we are getting ready the marketing materials and letting our patients know about the new practice of the hearing center for their convenience. I expect to have it operational by the end of August, but no later than the middle of September.

14. In my opinion, all of these additions and improvements to my practice will cause a positive change in my income over the next sixty (60) days.

15. With regards to the rental properties, the City of Englewood has cleared the building located at 54-56 Central and I can now rent the four (4) units. I already have commitment on two (2) apartments and am working on obtaining tenants for the other two (2) units. I anticipate that all four (4) units will be rented by September 1. 2009. The estimated total rental income for this property is approximately $5,400 per month. The total debt on this property is approximately $300,000.

16. I am also seeking to obtain tenants for the three (3) unit rental property at 316 Broadway in Paterson. I have a commitment on one (1) unit and the other two (2) units will also be rented by September 1 2009. My estimated total rental income for this property is $3,200 per month. The total debt on this property is approximately $325,000.

17. I am still trying to advertise and re-rent the one (1) unit rental property located at 70 Main Street in Paterson. Although I had a commercial tenant lined up, the City of Paterson would not approve a variance to operate a lounge at the property because it is less than two hundred (200) fee from a nursery school. I continue my efforts.

18. Finally, the two (2) unit property at 69 Main Street in Paterson is fully rented at $2,700 per month, and the regular monthly mortgage payment is approximately $2,100. The total debt on this property is approximately $250,000.

19. Based on the foregoing, my reorganization efforts continue and I respectfully request that my Plan be confirmed or adjourned for sixty (60) days.

20. Finally, a patient care ombudsman, Joseph Tomaino, has been appointed in this matter. Mr. Tomaino has filed numerous reports with the Court without a single negative reference. Mr. Tomaino has always provided positive review of his visits and has made recommendations for me to improve my business. I value Mr. Tomaino's advice and information provided, and intend on utilizing the information in my continued business practice.

5

      I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements is willfully false, I am subject to punishment.

                                        */s/ Ifeoma Ezekwo*
                                        IFEOMA EZEKWO

Dated:  August 11, 2009

F:\WPDOCS\A-M\Ezekwo, Ifeoma\Disclosure Stmt - spt cert.doc